**IN THE UNITED STATES DISTRICT COURT OF MISSOURI**
**Eastern District**

| | | |
|---|---|---|
| **WILLIAM ROSS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PHELPS COUNTY MISSOURI,** | ) | **Case No:** |
| *Please serve:* | ) | |
| County Clerk Laura Johnson | ) | |
| Phelps County Courthouse | ) | |
| 200 N. Main Street | ) | |
| Rolla, MO 65401 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **MICHAEL KIRN** | ) | |
| *Please serve at:* | ) | |
| Phelps County Sherriff's Department | ) | |
| 500 W. 2nd St. | ) | |
| Rolla, MO 65401 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **JOE TAYLOR,** | ) | |
| *Please serve at:* | ) | |
| Phelps County Sherriff's Department | ) | |
| 500 W. 2nd St. | ) | |
| Rolla, MO 65401 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **RODGER ANDERSON** | ) | |
| *Please serve at:* | ) | |
| Phelps County Sherriff's Department | ) | |
| 500 W. 2nd St. | ) | |
| Rolla, MO 65401 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **SEAN ELLIOT** | ) | |
| *Please serve at:* | ) | |
| Phelps County Sherriff's Department | ) | |
| 500 W. 2nd St. | ) | |



Rolla, MO 65401                                    )
                                                   )
And                                                )
                                                   )
**ADVANCED CORRECTIONAL**                          )
**HEALTHCARE, INC.**                               )
Serve registered agent:                            )
CT Corporation System                              )
120 South Central Avenue                           )
Clayton, Missouri 63105                            )
                                                   )
And                                                )
                                                   )
**SHANNON GILHED,**                                )
*Please serve at:*                                 )
Phelps County Sherriff's Department                )
500 W. 2nd St.                                     )
Rolla, MO 65401                                    )
                                                   )
And                                                )
                                                   )
**CAROLINE REGAN,**                                )
*Please serve at:*                                 )
Phelps County Sherriff's Department                )
500 W. 2nd St.                                     )
Rolla, MO 65401                                    )
And                                                )
                                                   )
**JOHN DOE DOCTOR**                                )
                                                   )
                                                   )     **JURY TRIAL DEMANDED**
                    **Defendants**                 )

## COMPLAINT

COME NOW Plaintiff, by and through his undersigned counsel, individually on behalf of Brenton Ross (deceased) and as beneficiary to the wrongful death of Brenton Ross, and for his cause of action against the above captioned Defendants, state and allege as follows:

## INTRODUCTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants for committing acts, under color of law, in violation of Brenton Ross' rights secured

2

under the Constitution and laws of the United States. This is also an action for wrongful death pursuant to Missouri's Wrongful Death Act and associated statutes, including but without limitation, Mo. Rev. Stat. §§ 537.080 and 537.090.

2. While in the custody, care, and control of Phelps County, Missouri, its local jail, Phelps County Sheriff, Phelps County Deputy Sheriffs, officers, administrators and jailors and while under the care of Defendants Jenn Worley, Shannon Gilhed and Caroline Regan and their employer, Advanced Correctional Healthcare, the named Defendants denied Brenton Ross adequate and proper treatment for a known serious diagnosed medical psychiatric condition, and the named Defendants failed to protect Brenton Ross from the same known risks of suicide and to have his serious medical needs addressed. In this regard, Defendants acted with deliberate indifference to the risks associated with Brenton Ross' known serious diagnosed medical condition and suicide, and Defendants' actions and inaction amounted to a deliberate indifference to or tacit authorization of violative practices.

3. As a direct and proximate result of Defendants' disregard of accepted standards, Brenton's rights, and his known, diagnosed, and recognized condition, Brenton Ross not only experienced extensive pain and suffering, he died a horrible and preventable death. Defendants' acts and omissions, occasioned under color of state law, evidence a knowing and deliberately indifferent pattern of conduct in violation of both the Eighth and Fourteenth Amendments of the United States Constitution and state law, giving rise to both federal claims and pendent state law claims.

## PARTIES

4.     Plaintiff William Ross, at all times mentioned herein, was a resident of Jackson County, Missouri and was the natural father of Decedent Brenton Ross who died on January 3, 2024.

5.     Plaintiff is within the class of individuals entitled to bring this action pursuant to RSMo. §537.080.

6.     Defendant Phelps County is a political subdivision of the State of Missouri, organized and existing under the laws of the State of Missouri, and at all times herein was acting by and through its employees, departments, officers, administrators, servants, and agents.

7.     At all relevant times, Defendant Phelps County owned, maintained, controlled, and operated the Phelps County Jail in Rolla, Missouri where Brenton was detained from January 5, 2023, through the date of his death on January 3, 2024.

8.     Defendant Phelps County is responsible for the wrongful death of Brenton, which was caused by the acts and/or failures to act of the duly appointed sheriff, deputies, jailers, and staff of the Reynolds County Sheriff's Office, who were acting under color of the law at the time, as well as the negligent acts and/or omissions of each and every other Defendant, who were employees and/or agents of Phelps County, and were acting within their scope of employment.

9.     At all relevant times herein, Defendant Michael Kirn ("Kirn") was a citizen of Missouri and was the duly elected sheriff of Phelps County and was employed as such by Defendant Phelps County and was acting within the course and scope of his employment with Defendant Phelps County, and was acting under the color of the laws, statutes, ordinances, regulations of the State of Missouri and pursuant to either official policy or the custom and practice of Defendant Phelps County. Defendant Kirn is sued in both his individual and official capacities.

10.    Defendant Lieutenant Joe Taylor is a citizen and resident of the State of Missouri who at all times stated herein acted as administrator of the Jail and is being sued in his individual and official capacity.

11.    Defendants Kirn and Taylor were the policymakers with respect to operations, general orders, and treatment of detainees, and responsible for the daily operations of the Phelps County Jail and formed and adopted its customs.

12.    Defendants Kirn and Taylor and, together with Defendant Phelps County, had responsibility for the training and supervision and conduct of those individually named Defendants as more fully set forth herein.

13.    Defendant Officer Rodger Anderson was working as the on-duty sergeant on the date and time when Brenton Ross died by suicide and was responsible for overseeing all activities within the jail.

14.    Defendant Officer Sean Elliott was working in the control center on the date and time when Brenton Ross died by suicide and was responsible for observing the activity within the jail via camera, including within Brenton Ross' cell.

15.    Defendant Advanced Correctional Healthcare, Inc., (hereinafter 'ACH') is a corporation contracting with the Phelps County Jail to provide medical care and services within the Phelps County Jail to inmates within the jail. ACH has its corporate offices in the State of Illinois at 3922 W. Baring Trace, Peoria, IL 61615. ACH can be served personally on its registered agent, C T Corporation System, 120 South Central Avenue, Clayton, MO 63105.

16.    Defendant Shannon Gilhed, RN, is a Missouri citizen, and at all times relevant to this action, was an employee of ACH and/or Phelps County working at the Phelps County Jail.

17.    Defendant Caroline Regan, LCSW, is a Missouri citizen, and at all times relevant to this action, was an employee of ACH and/or Phelps County working at the Phelps County Jail.

18.    Defendant John Doe Doctor was an employee of ACH and/or Phelps County working at the Phelps Count Jail who provided medical care to the decedent whose identity is unknown.

19.    At all times stated herein, each Defendant acted pursuant to their employment with Advanced Correctional Healthcare and/or Phelps County and under the color of authority of the law of the State of Missouri.

**JURISDICTION**

20.    All complained of actions and omissions occurred at the Phelps County Jail, located in Phelps County, Missouri.

21.    The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff presents federal claims arising under the Eighth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983.

22.    This Court further has jurisdiction over Defendant Advanced Correctional Healthcare, Inc., under the doctrine of diversity Jurisdiction.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Phelps County, Missouri, within this Court's geographic judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

24.    Decedent Brenton Ross was held as a pre-trial detainee in the Jail from approximately January 6, 2023 until January 3, 2024 while awaiting trial on various charged criminal offenses.

25.    On January 8, 2023, Defendant Caroline Regan performed a medical history and health appraisal on the decedent. At this time, Defendant Regan noted that the decedent had a history of bipolar disorder and ADHD and was taking Zyprexa, among other medications, to address these mental health disorders.

26.    On January 31, 2023, Decedent requested to have medications changed. He was noted to have chronic mental health problems.

27.    On February 26, 2023, Decedent was placed on suicide watch within the Phelps County Jail.

28.    On February 28, 2023, Decedent continued complaining of anxiety, bipolar and other mental health concerns.

29.    On March 1, 2023, the decedent complained to mental health provider Defendant Regan that he had increased anxiety and depression and described his head as getting loud. He reported his PTSD diagnosis. He reported several suicide attempts in and out of jail.

30.    On April 5, 12th, 18th and May 1, 12th and 17th, Decedent requested mental health services.

31.    On May 17, 2023, Decedent saw mental health provider Defendant Regan. Decedent reported feelings of paranoia and that "his will to live sucks" and that he was "tired of going through the motions." The treatment plan was to increase his medication.

32.     On May 24, 2023, Decedent again saw Defendant Regan and reported that his symptoms were still present.

33.     On May 31, 2023, Decedent again saw Defendant Regan and reported that he was feeling more depressed since starting new medication. Decedent requested a medical evaluation for stabilization of his symptoms. Defendant Regan found the Decedent would benefit as his symptoms of depression had worsened.

34.     On June 5, 13th, 15th and 21st, Decedent requested to see a mental health provider.

35.     On June 21, 2023, Decedent saw Defendant Regan and reported feeling better but requested medication for his depression.

36.     On June 23, July 2, 10th and 11th, Decedent requested to be seen by a mental health provider to have his medication adjusted to what he was formally on as he used to feel better.

37.     On July 12, 2023, Decedent saw Defendant Regan and requested to have his mental health medication changed. Regan noted the Decedent appeared to be experiencing severe depression.

38.     On July 13, 2023, Defendant John Doe Doctor met with Decedent and adjusted Decedent's medication.

39.     On July 31, 2023, Decedent requested a mental health consult and was seen on August 2 by Defendant Regan. Decedent reported days of deep depression with feelings of self-loathing and wishing he was dead. He reported not seeing a point in life.

40.     On August 22, 2023, Decedent requested to see a mental health provider and to have his medication refilled.

41.     On August 30, 2023, Decedent was seen by Defendant Regan and Decedent was doing better with current medication and the plan was to stabilize him on his current medication.

42.    On September 17, 2023, Decedent requested to see a mental health provider.

43.    On October 3, 2023, Decedent requested to see a mental health provider.

44.    On November 13, 2023, Decedent requested to see a mental health provider complaining of severe depression

45.    On November 15, 2023, Decedent was seen by Defendant Regan and complained of severe depression. Defendant Regan's treatment plan was for a medical evaluation for alternatives to his current medication to combat his severe depression.

46.    On November 15, 2023, Decedent was seen by Defendant Gihled and had his medication adjusted.

47.    On December 13, 2023, Decedent was seen by Defendant Regan and reported continued depression and psychosis improvement with medication Zyprexa. He reported no longer having thoughts of suicide.

48.    On December 20, 2023, Decedent's Zyprexa was discontinued by Defendant Gihled. Decedent reported hearing voices. The treatment plan was for a mental health consult. Decedent was diagnosed with major depressive disorder with psychosis.

49.    On December 21, 2023, Decedent complained that he was no longer allowed to take Zyprexa anymore and that he was experiencing an increase in mental health symptoms and that he was not doing well. He requested to be placed on Zyprexa again.

50.    On January 3, 2024, the Decedent was placed in a cell by himself.

51.    Defendants Kirn, Taylor and/or Anderson made the decision that Decedent should not be placed on suicide watch and could be placed in a cell by himself.

52.    On January 3, 2024, at approximately 8:05 pm, the Decedent was found hanging from a bedsheet.

53.     Decedent could be observed hanging via camera in the control center of Phelps County Jail where Defendant Officer Sean Elliott was working.

54.     The Decedent was hanging for approximately one hour and forty-five minutes before Phelps County Jail personnel came.

55.     Brenton Ross died by suicide on January 3, 2024 in the Phelps County Jail.

**COUNT I**
**42 U.S.C.§1983 Deliberate Indifference to**
**Serious Medical Needs and/or Serious Risk of Harm**
**(Defendants Anderson, Elliott)**

56.     Plaintiff incorporates by reference the allegations and averments contained in Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

57.     Defendants were responsible for the housing, care, safety, custody and control of the inmates and/or detainees incarcerated or detained at Phelps County Jail including but not limited to Decedent, and therefore, had a duty to take reasonable measures to guarantee the safety of the detainees and inmates.

58.     In January of 2024, Decedent had a clearly established right under the Eighth and/or Fourteenth Amendment to be protected from deliberate indifference to serious medical needs, including the risk of suicide.

59.     Each Defendant had a duty to provide medical care for the detainees or inmates at the Jail and to take reasonable action in response to the known risk of suicide by detainees or inmates at the Jail including Decedent.

60.     Defendants knew that threats of harm and changes in behavior of a detainee were indicia of a detainee at high-risk for committing suicide.

61.     In January of 2024, Defendants knew and were aware that Decedent presented a danger of harm to himself including the risk of suicide because of Decedent's frequent request to

10

see a mental health provider, prior placement on a suicide watch list and because Decedent's mental health medication had recently been discontinued.

62.    Defendants also knew that Decedent's mental condition had deteriorated after having his mental health medication modified.

63.    Defendants knew and appreciated that there was a risk that Decedent would attempt to commit or would commit suicide before January 3, 2024.

64.    Despite the knowledge that Decedent was at high-risk of attempting to commit or committing suicide, Defendants failed to take preventive measures to address that risk.  Defendants failed to take preventive measures and were deliberately indifferent to Decedent's risk of suicide in the following respects:

a.    Failing to conduct periodic checks of Decedent;

b.    Failing to increase the frequency with which Jail staff observed Decedent while in his cell;

c.    Placing an inmate with suicidal tendencies like Decedent in a cell by himself;

d.    Failing to conduct periodic suicide assessment screenings with Decedent after Decedent claimed and/or threatened self-harm and/or had his mental health medication discontinued;

e.    Failing to place Decedent on suicide watch;

f.    Failing to inspect Decedent's cell and remove items, such as a bed sheet, that Decedent could use to commit suicide;

g.    Failing to monitor Decedent while he placed in a cell by himself;

h.    Failing to remove items from Decedent's cell with which Decedent might harm himself; and/or

i.      Such other measures to protect Decedent as might be revealed during discovery.

65.     Upon information and belief, Defendants also failed to follow the policies and procedures in effect at the Jail and were deliberately indifferent to Decedent's risk of suicide in the following respects:

a.      Failing to visually observe Decedent while on lockdown at a minimum of every 30 minutes;

b.      Placing the Decedent in a cell by himself;

c.      Failing to place Decedent on suicide watch after discontinuing his mental health medication;

d.      Failing to ensure that items that could be used to cause death by suicide were not accessible to detainees absent direct and constant supervision by jail staff;

e.      Such other measures to protect Decedent as might be revealed during discovery.

66.     As a direct consequence of the above failures, Defendants failed to prevent Decedent from harming himself.

67.     Defendants' conduct as described above constitutes actions that shock the conscious under the Eighth Amendment and/or Fourteenth Amendments of the United States Constitution and violated clearly established constitutional and statutory rights.

68.     The conduct of Defendant was objectively unreasonable and demonstrates a deliberate indifference to a substantial risk of serious harm to Decedent.

69.     As a direct and proximate result of Defendants' conduct and violation of Decedent's constitutional rights, Plaintiff is entitled to recover damages including but not limited to damages suffered by Decedent including severe physical pain and suffering, severe emotional distress and/or mental anguish, funeral expenses, medical expenses, loss of life and loss of future

earnings.

70.     The conduct of Defendants described above demonstrated a conscious and knowing disregard for Decedent's health and safety and Plaintiff should be allowed to recover and Defendants should be ordered to pay punitive damages.

71.     Pursuant to 42 U.S.C. §1988(b), recovery of Plaintiff's attorney fees are authorized, so Defendants should be ordered to pay Plaintiff's reasonable attorneys' fees and the costs of this action.

**WHEREFORE,** Plaintiff requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

**COUNT II**
**42 U.S.C.§1983 Deliberate Indifference**
**based upon failure to train and/or supervise**
**(Defendants Kirn, Taylor,)**

72.     At all relevant times, Defendants Kirn and Taylor acting under color of state law as the sheriff and jail administrator, respectively, for the Moniteau County Jail.

73.     As the sheriff and jail administrator, Defendants Kirn and Taylor were the final policymakers at the Jail and were responsible for the hire, training, supervision, retention and discipline of the employees at the Jail.

74.     Defendants Kirn and/or Taylor failed to properly supervise, train and/or discipline staff at the Jail in the following respects:

a.      Inadequate training and instruction of employees on the policies and procedures of the County including the observation of individuals in lockdown and/or suicide watch, the referral of individuals who have attempted suicide to a medical professional, the placement of high-risk individuals on suicide watch, the assessment of individuals at risk of suicide, the providing of high-

13

risk behavior of a detainee to other employees of the County, the storage and handling of materials that could be used to commit suicide to ensure that detainees were not in possession of such materials without adequate supervision and other inadequate and training as revealed during discovery;

       b.    Failure to supervise and monitor employees at the Jail to ensure that employees complied with and/or followed the policies and procedures at the Jail including but not limited to the observation of individuals in lockdown and/or suicide watch, the referral of individuals who have attempted suicide to a medical professional, the placement of high-risk individuals on suicide watch, the assessment of individuals at risk of suicide, the providing of high-risk behavior of a detainee to other employees of the County and the storage and handling of toxic or caustic substances to ensure that detainees were not in possession of such materials without adequate supervision;

       c.    Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the policies and procedures of the County including the observation of individuals in lockdown and/or suicide watch, the referral of individuals who have attempted suicide to a medical professional, the placement of high-risk individuals on suicide watch, the assessment of individuals at risk of suicide, the providing of high-risk behavior of a detainee to other employees of the County and the storage and handling of toxic or caustic substances to ensure that detainees were not in possession of such materials without adequate supervision;

       d.    Failure to adopt, properly implement and/or enforce policies regarding the observation of individuals in lockdown and/or suicide watch, the referral of individuals who have attempted suicide to a medical professional, the placement of high-risk individuals on suicide

watch, the assessment of individuals at risk of suicide, the providing of high-risk behavior of a detainee to other employees of the County and the storage and handling of toxic or caustic substances to ensure that detainees were not in possession of such materials without adequate supervision;

e.      Defendants Kirn and/or Taylor's failure to train and/or supervise Jail employees were the direct and proximate cause of the violation of Decedent's constitutional rights under the Eighth and/or Fourteenth Amendment.

75.     As a direct consequence of the above failures, Defendants failed to prevent Decedent from harming himself including but not limited to allowing Decedent to hang himself with a bed sheet.

76.     Defendants' conduct as described above constitutes actions that shock the conscious under the Eighth Amendment and/or Fourteenth Amendments of the United States Constitution and violated clearly established constitutional and statutory rights.

77.     The conduct of Defendants in failing to adequately train and/or supervise the employees at the Jail was objectively unreasonable and demonstrates a deliberate indifference to a substantial risk of serious harm to Decedent.

78.     As a direct and proximate result of Defendants' conduct and violation of Decedent's constitutional rights, Intervenors are entitled to recover damages including but not limited to damages suffered by Decedent including severe physical pain and suffering, severe emotional distress and/or mental anguish, funeral expenses, medical expenses, loss of life and loss of future earnings.

79.     The conduct of Defendants described above demonstrated a conscious and knowing disregard for Decedent's health and safety and Intervenors should be allowed to recover and

15

Defendants should be ordered to pay punitive damages.

80.     Pursuant to 42 U.S.C. §1988(b), recovery of Plaintiff's attorney fees are authorized, so Defendants should be ordered to pay Plaintiff's reasonable attorneys' fees 'and the costs of this action.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, for compensatory damages in an amount to be reasonably determined by a jury and for punitive damages in an amount determined by a jury to be sufficient to punish Defendants and deter similar conduct by others in the same and similar situation, plus costs of this action, attorney's fees, and such other relief as the Court deems fair and appropriate under the circumstances.

<u>**COUNT III**</u>
**42 U.S.C. § 1983 – Deliberate Indifference to Medical Needs**
**(Defendants Gilhed, Regan and Dr. John Doe)**

81.     Plaintiffs incorporate by reference the allegations and averments contained in Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

82.     Decedent was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

83.     Defendant(s) is a person as recognized 42 U.S.C. § 1983.

84.     Defendants were, at all times relevant, acting under the color of state statute,

ordinances, regulations, customs, or usage in their deprivation of decedent's rights, privileges and immunities guaranteed to him by the Constitution of the United States, including the Amendments thereto, and of the laws of the State of Missouri.

85.     At the time of the incident that is the subject of Plaintiff's Complaint, decedent had clearly established Constitutional rights, including the right to life under the Fourteenth Amendment to the United States Constitution.

16

86.     Defendants knew, or should have known, of these rights at the time of the complained of conduct.

87.     The acts or omissions of Defendants, and its employees, as described herein, deprived decedent of his constitutional and statutory rights, resulting in his death and causing Plaintiffs' damages.

88.     Defendants intentionally, knowingly and purposely or deliberately deprived decedent of his clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

89.     Defendants' actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to decedent's federally protected rights. The indifference displayed by Defendants shocks the conscience and so violated Decedent's Fourteenth Amendment rights.

90.     As a direct and proximate result of Defendants' interference with decedent's federal constitutional and statutory rights, Plaintiff has suffered damages and losses.

91.     Defendants actually knew of decedent's objectively serious medical needs or should have known, but were deliberately indifferent to her needs and violated her Fourteenth Amendment rights in that Defendants:

a.      Knowingly and deliberately failing to properly monitor decedent;

b.      Knowingly and deliberately failing to properly treat decedent's medical condition;

c.      Knowingly and deliberately failing to allow decedent access to appropriate medical services and care for his medical needs;

d.      Knowingly and deliberately failed to respond to decedent in a timely manner; and;

e.      Knowingly or deliberately failing to supervise RNs when tasked with making medical decisions;

f.      Knowingly and deliberately disregarding decedent's objectively serious medical needs,

g.      Such other acts of deliberate indifference that the evidence will show.

92.      The denial or delay of health care treatment for decedent was attributable to something more than simple negligence upon the part of Defendants.

93.      Defendants' conduct showed a complete indifference to or a conscious disregard for the safety of decedent and others, thereby justifying an award of aggravating circumstances damages in such sum as will serve to punish and deter Defendants, and others, from like conduct in the future.

94.      Plaintiff is entitled to attorney' fees and costs pursuant to 42 U.S.C. 1988.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, for compensatory damages in an amount to be reasonably determined by a jury and for punitive damages in an amount determined by a jury to be sufficient to punish Defendants and deter similar conduct by others in the same and similar situation, plus costs of this action, attorney's fees, and such other relief as the Court deems fair and appropriate under the circumstances.

## COUNT IV
### Wrongful Death
### Medical Malpractice
### (Defendants Gilhed, Regan and Dr. John Doe)

95.      Plaintiffs incorporates by reference the allegations and averments contained in Paragraphs 1 through 93 of this Complaint as though fully set forth herein.

96.     Defendant ACH is a resident of the State of Illinois and Plaintiff asserts that this Court has diversity jurisdiction over it.

97.     Pursuant to the Court's exercise of supplemental or ancillary jurisdiction over all other claims so related to claims in the action within its original jurisdiction that said claims form part of the same case or controversy under Article III of the United States Constitution (28 USC section 1367), Plaintiff herein makes claims for medical malpractice resulting in death against those with a duty to provide him with medical care while in the Phelps County Jail, under the control and custody of Phelps County and its employees, agents or contracts.

98.     During decedent's care, treatment and custodial supervision, Defendant ACH owed a duty to decedent individually and/or by and through their employees such as Defendants Gilhed, Regan and Doe, its agents, servants and/or representatives as aforesaid, to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the same profession in providing medical services and care and supervision.

99.     ACH, by and through its own employees and those of Phelps County, had a duty to assure that an inmate received medical attention when a potentially life or limb threatening illness occurred within the Phelps County Jail.

100.    Defendants breached their duty owed to decedent in one or more of the following respects:

a.      Failed to appropriately treat decedent's condition;

b.      Discontinued decedent's medication;

c.      Discontinued decedent's medication without ensuring he was properly monitored;

d.      Failed to appropriately treat decedent;

e.      Failed to timely alert appropriate medical doctors of decedent's condition;

f.     Failed to provide the required care to treat decedent's condition;

g.     Failed to monitor decedent;

h.     Failed to seek appropriate consultation;

i.     Failed to transfer decedent to the hospital;

j.     Failed to create, enforce and follow policies, procedures and protocols for working up and managing patients under the same or similar circumstances;

k.     Failed to supervise RNs when tasked with making medical decisions;

l.     Such further negligence as will be revealed through discovery and the evidence.

101.   As a direct and proximate result of the negligence and carelessness of Defendants as described above, Brenton Ross suffered before his death.

102.   As a direct and proximate result of the negligence and carelessness of Defendants as described above, plaintiff suffered economic and non-economic harm.

103.   Defendants' conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiff and others, thereby justifying an award of aggravating circumstances damages in such sum as will serve to punish and deter Defendants, and others, from like conduct in the future.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, for compensatory damages in an amount to be reasonably determined by a jury and for punitive damages in an amount determined by a jury to be sufficient to punish Defendants and deter similar conduct by others in the same and similar situation, plus costs of this action, attorney's fees, and such other relief as the Court deems fair and appropriate under the circumstances.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38(b) on all issues triable to a jury as a matter of right.

Respectfully Submitted By:

**THE POPHAM LAW FIRM, P.C.**

*/s/ Thomas J. Porto*
Thomas J. Porto (#59716)
712 Broadway, Suite 100 Kansas City, MO 64105
Telephone:    (816) 221-2288
Telecopier:    (816) 221-3999
tporto@pophamlaw.com

And

*/s/ Paeten E. Denning*
Paeten E. Denning          MO #72180
Denning Law Firm, LLC
8900 Indian Creek Parkway, Suite 210
Overland Park, KS 66210
Telephone:   (816) 702-8400
Facsimile:    (816) 702-8401
pdenning@denninglawfirm.com

**ATTORNEYS FOR PLAINTIFF**
